UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

BURLINGTON INDUSTRIES, INC.,            )
                                        )
     Plaintiff,                         )
                                        )
vs.                                     )   Civil Action No. CV97-S-2479-NE
                                        )
MAPLES INDUSTRIES, INC.,                )
                                        )
     Defendant.                         )

**ENTERED**

**OCT 0 1 1998**

MEMORANDUM OPINION

This action arises from an alleged misappropriation of trade secrets. Burlington Industries, Inc. ("Burlington") claims that Maples Industries, Inc. ("Maples") purchased four space dye yarn machines from a third-party, Bobby Vinson & Associates, Inc. ("BVA"). Employees of BVA formerly were employed by Burlington, and they allegedly utilized Burlington's trade secrets to design the space dye yarn machines.

Burlington commenced an action in the United States District Court for the Eastern District of Arkansas in 1993 against BVA's successor corporation, United Textile Machine Company ("UTMC"), and Bobby Vinson individually, to enjoin its former employees from utilizing its trade secrets. That litigation culminated in a consent decree entered into by Bobby Vinson, and a determination by the court that UTMC had misappropriated trade secrets.

Thereafter, Burlington commenced this action in the United States District Court for the Eastern District of Arkansas to enjoin Maples' use of the space dye yarn machines, and to recover

damages. After the Eighth Circuit Court of Appeals determined there was a lack of personal jurisdiction in the Arkansas court, the action was transferred to this court.

The action is before this court on Burlington's motion for partial summary judgment. Burlington seeks to collaterally estop Maples from challenging the status of the space dye yarn machines as a trade secret. Burlington alleges that the consent decree and permanent injunction obtained against Bobby Vinson and UTMC are applicable against Maples.

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..." The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir.

2

1995)(*per curiam*). Rule 56 permits the movant to discharge this burden <u>with</u> or <u>without</u> supporting affidavits. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Jeffery*, 64 F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence <u>could</u> draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir.

3

1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

## II. DISCUSSION

### A. Choice Of Law

#### 1. Eleventh Circuit's jurisprudence

This court recognizes, as has the Eleventh Circuit, an apparent conflict over the choice of law for determining the preclusive effect of prior federal judgments rendered in diversity actions, when applied to a subsequent diversity action in federal court:

> Our precedents on this question appear to lead in two different directions. *Compare Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1503 (11th Cir. 1984) (a federal court reviewing the preclusive effect of a prior federal judgment applies federal common law) *with NAACP v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990) ("Federal courts apply the law of the state in which they sit with respect to the doctrine of res judicata."). As a result, the district courts have found themselves in some confusion. *See e.g., Jones v. New England Life Ins. Co.*, 974 F. Supp. 1476, 1479-81 (M.D. Ga. 1996) (describing these precedents). ... [W]e need not resolve the conflict to decide this appeal. We note the problem, however, in the hope that future litigants will consider and brief the issue.

4

*Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1356 n.1 (1998).

This apparent confusion notwithstanding, the direction provided in *Precision Air Parts, Inc. v. AVCO Corp.*, 736 F.2d 1499 (11th Cir. 1984), is unmistakable: "When a federal court sitting in diversity examines the collateral estoppel or res judicata effect of a prior federal judgment, based either on diversity or a federal question, <u>it must apply federal common law</u>." 736 F.2d at 1503 (emphasis supplied) (citations omitted). The Eleventh Circuit was no less clear in a number of other opinions, including *Empire Fire and Marine Insurance Co. v. J. Transport Inc.*, 880 F.2d 1291 (11th Cir. 1989), in which the court declared: "Although there are still some cases that say that when the federal court is exercising its diversity jurisdiction, the law of the state where it sits determines the preclusive effect of its judgment, ... this view is erroneous." 880 F.2d at 1293 n.2. *See also United States v. Barnette*, 10 F.3d 1553, 1561 (11th Cir. 1994); *Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990); *Gibbs v. Air Canada*, 810 F.2d 1529, 1535 (11th Cir. 1987).

There are, nevertheless, decisions to the contrary, applying state law with respect to preclusive effect of prior federal judgments. In *Jones v. New England Life Insurance*, 974 F. Supp. 1476 (1996), Judge Sands of the Middle District of Georgia provides a thorough analysis of the Eleventh Circuit precedent on this issue. As Judge Sands notes, the line of cases applying state law

5

of preclusion began with *NAACP v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990). 974 F. Supp. at 1479-80. Subsequent cases applying state law rely solely on *Hunt*. *See Manning v. City of Auburn*, 953 F.2d 1355, 1358 (11th Cir. 1992); *Wesch v. Folsom*, 6 F.3d 1465, 1471 (11th Cir. 1993). The Eleventh Circuit's opinion in *Hunt*, however, cited only one case for this proposition, and that case applied state law to determine the preclusive effect a federal court should give a <u>state</u> court judgment. *See McDonald v. Hillsborough County*, 821 F.2d 1563, 1565 (11th Cir. 1987).

Thus, a review of the Eleventh Circuit case law reveals that application of federal principles of preclusion rests on a firmer foundation.[1]

   2.  **Law of other circuits**

In addition, many federal circuits have faced this issue recently, and most have ruled in favor of applying federal law. *See Porn v. National Grange Mutual Insurance Co.*, 93 F.3d 31, 33-34 (1st Cir. 1996); *Kaplan v. First Options of Chicago, Inc.*, 143 F.3d 807, 814-15 (3rd Cir. 1998) (resolving issue of first impression in favor of applying federal preclusion principles and collecting

---

[1] Furthermore, the Eleventh circuit's application of state law to determine the effect of federal judgments, perhaps, is limited to claim preclusion, i.e. res judicata. Thus, this line of cases would be inapposite to the case at bar, where Burlington argues issue preclusion, i.e. collateral estoppel. The doctrine of collateral estoppel addresses the effects of litigation of the exact issue as reflected in a prior judgment. *See Manning*, 953 F.2d at 1358 (discussing the differences of the two preclusion doctrines, and applying the rule in *Hunt* to the issue of claim preclusion).

6

cases from other courts of appeals); *Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1179-80 (4th Cir. 1989); *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 393 n.6 (5th Cir. 1998); *J.Z.G. Resources, Inc. v. Shelby Insurance Co.*, 84 F.3d 211, 214 (6th Cir. 1996); *Rymer Foods, Inc. v. Morey Fish Co.*, No. 96-4139, 1997 WL 358870, at *4 (7th Cir. 1997) (unpublished disposition); *Hunt v. Liberty Lobby, Inc.*, 707 F.2d 1493, 1496 (D.C. Cir. 1983); *see also Maharaj v. BankAmerica Corp.*, 128 F.3d 94, 97 (2nd Cir. 1997) (suggesting, but not holding, that federal law should control). *But see Hillary v. Trans World Airlines, Inc.*, 123 F.3d 1041, 1043 (8th Cir. 1997)[2]; *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982).

The Fourth Circuit's analysis in *Shoup* is both succinct and sound:

> [Q]uestions of the effect and scope of [a federal court's] judgment involve the power of the federal tribunal itself, and are not varied merely because state rules of decision underlie the judgment. ... The judgment of a federal court is no less a federal judgment because it was rendered in diversity. "Federal law determines the effects under the rules of res judicata of a judgment of a federal court," Restatement (Second) of

---

[2] The Eighth Circuit did recognize that its resolution was the minority approach:

> Although the majority of circuits have held that the res judicata effect of a federal court judgment in a diversity action is a matter of federal law, "cases from this circuit have consistently concluded that [the res judicata or] collateral estoppel [effect of a prior judgment] in a diversity action is a question of substantive law controlled by state common law."

*Hillary*, 123 F.3d at 1043.

7

>Judgments § 87 (1982), just as in a state court the law of the state in which the judgment was rendered determines the preclusive effect a federal court must give the judgment. *Migra v. Warren City School Dist. Bd. Of Ed.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). Any other result would consign the effect of federal judgments to the uncertainties of state law in whatever jurisdiction a subsequent suit happened to be brought.

872 F.2d at 1179-80 (some citations omitted).

The District of Columbia Circuit offered similar reasoning in *Hunt v. Liberty Lobby, Inc.*, 707 F.3d 1493 (D.C. Cir. 1983). The court noted the independence of the federal judicial system, and the concomitant importance of this system determining the scope of its own judgments, and thereby avoiding nullification of federal judgments by supervening interpretations of state law of res judicata. If the system allowed the scope of its judgments to be determined by state law, "federal courts would not be a reliable forum for final adjudication of a diversity litigant's claims." *Hunt*, 707 F.2d at 1496-97 (quoting opinion of Judge Ainsworth in *Aerojet-General Corp. v. Askew*, 511 F.2d 710, 716 (5th Cir. 1975)).[3]

### 3. The conclusion of this court

The majority of Eleventh Circuit cases, as well as the majority of other federal courts of appeal, apply federal law to determine the preclusive effect of prior federal judgments.

---

[3] The Eleventh Circuit echoed these concerns in *Empire Fire and Marine Insurance Co. v. J. Transport, Inc.*, 880 F.2d 1291, 1293 n.2 (11th Cir. 1989).

8

Moreover, sound policy reasons support the application of federal law to preserve the integrity of the federal judiciary. Therefore, this court holds that when a federal court must survey the horizon of a prior federal judgment, federal law stands as the proper level.

## B.  Requirements For Collateral Estoppel

Having determined that the court must apply federal common law when examining the preclusive effect of a prior federal judgment, the court now looks to the applicable federal law. The Eleventh Circuit discussed the doctrine of collateral estoppel in the case of *In re Southeast Banking Corporation*, 69 F.3d 1539 (11th Cir. 1995), and said: "Collateral estoppel bars relitigation of a previously decided issue when the parties are the same (<u>or in privity</u>) if the party against whom the issue was decided had a full and fair opportunity to litigate the issue in the earlier proceeding." 69 F.3d at 1552 (emphasis supplied). Stated differently, "it is a violation of due process for a judgment to be binding on a litigant who was not a party <u>or a privy</u> with a party therein." *Parklane Hosiery Company v. Shore*, 439 U.S. 322, 327 n.7, 99 S.Ct. 645, 649 n.7, 58 L.Ed.2d 552 (1979) (emphasis supplied). The Eleventh Circuit went further in *Southeast Banking*, listing the four elements that must be established before collateral estoppel applies:

> (1) the issue at stake must be identical to the one decided in the prior litigation; (2) the issue must have

9

> been actually litigated in the prior proceeding; (3) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case. ...

69 F.3d at 1552 (citations omitted).

### 1. Privity

Maples first contends that Burlington cannot survive the threshold inquiry of whether Maples had a sufficient connection to the prior action, *i.e.* whether they were actual parties to the litigation or were in privity with the actual parties. The named defendants in the prior litigation were BVA, UTMC, Jerry Webb, Tommy Hammil, and Bobby Vinson. The resulting consent decree and permanent injunction bind, respectively, "Bobby Vinson, his agents, successors and assigns," (Doc. No. 28, exhibit 3 at 3), and "Jerry Webb, Tommy Hammil, and [UTMC], their agents, successors and assigns" (Doc. No. 28, exhibit 4 at 13). Maples was not a party to the previous action, so the issue becomes whether Maples was in privity with the defendants in that action.

### a. Choice of law: "privity"

Although neither party presents the argument, the court recognizes that some courts apply different choice of law rules for determining the preclusive effect of judgments when "privity" is at issue. *See J.M.S. & Associates v. Eastman Kodak Co.*, No. 97-1348, 1998 WL 415988, at *2 (6th Cir. 1998) (unpublished disposition) (identifying the issue but refusing to pass on it). The Tenth

10

Circuit has noted confusion in its jurisprudence as to which law governs issues of preclusion for successive diversity jurisdiction cases in federal court, *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 977 (10th Cir. 1995), but has held consistently that "where the question is whether there is privity between the parties in different diversity suits, a federal court must employ <u>state</u> rules of privity." *Federal Insurance Co. v. Gates Learjet Corp.*, 823 F.2d 383, 386 (10th Cir. 1987); *see also Lowell Staats Mining Co. v. Philadelphia Electric Co.*, 878 F.2d 1271, 1274 (10th Cir. 1989). The Fourth Circuit has expressed in *dicta* its inclination to apply the same principle. *See Brooks v. Arlington Hospital Association*, 850 F.2d 191, 195 (4th Cir. 1988) (citing *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986)); *see also Branning v. Morgan Guaranty Trust Co.*, 739 F. Supp. 1056, 1063 (D. S.C. 1990); *Spiker v. Capitol Milk Producers Cooperative, Inc.*, 577 F. Supp. 416, 418-19 (W.D. Va. 1983). Moreover, learned treatises also make the distinction with issues such as "privity." *See Restatement (Second) of Judgments* § 87 cmt. b (1982); 18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4472 (Supp. 1997).

The Seventh Circuit, however, steadfastly applies federal law of preclusion, even when addressing questions of privity. *Rymer Foods*, 1997 WL 358870, at *5.

More important to the case at bar, the Eleventh Circuit does not make the distinction, but has relied on federal law in deciding

11

questions of "privity" for preclusion purposes. *See Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468, 1472 (11th Cir. 1986); *Southwest Airlines Co. v. Texas International Airlines, Inc.*, 546 F.2d 84, 95-97 (5th Cir. 1977); *see also Jaffree v. Wallace*, 837 F.2d 1461, 1467 (11th Cir. 1988) (federal question actions). Thus, given the Eleventh Circuit's reliance on federal law and the policy reasons behind the application of federal preclusion principles, this court will apply federal law to decide the issue of privity.

### b. Law of the Eleventh Circuit

In a discussion of privity in *Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468 (11th Cir. 1986), the Eleventh Circuit said that "'[p]rivity' describes a relationship between one who is a party of record and a nonparty that is sufficiently close so a judgment for or against the party should bind or protect the nonparty." 787 F.2d at 1472 (citations omitted). The court listed the several forms such a relationship may take: (1) nonparty as successor to the party's interest in property; (2) nonparty in control of the original suit; and (3) nonparty's interests otherwise were represented adequately. *Id.* (citing 1B *Moore's Federal Practice* § 0.411[1] at 392 (2d Ed. 1984)).

### (1) Succession to BVA's interests

Describing this first basis for privity, the Fifth Circuit in 1977 stated that "a non-party who has succeeded to a party's

12

interest in property is bound by any <u>prior</u> judgments against the party." *Southwest*, 546 F.2d at 95 (emphasis supplied).[4] The court finds no binding precedent that completes the inference necessary to resolve this dispute, *i.e.* a nonparty succeeding to a party's interest is not bound by subsequent judgments against that party.

The court is not greatly troubled, however, to find strongly persuasive authority that suggests a resolution. The Fourth Circuit recently passed on this exact issue in a case that Burlington brought against a different purchaser of a similar machine from BVA. In *Burlington Industries, Inc. v. Palmetto Spinning Corporation*, No. 95-2686, 1996 WL 36890 (4th Cir. 1996) (unpublished disposition), the court held that the purchaser, Palmetto, was not in privity as a result of its interest, as successors, in the machines from BVA, and therefore was "not collaterally estopped from litigating whether [its] machine was a Burlington trade secret." 1996 WL 36890, at *2-*3. The court "place[d] great weight on the fact that Palmetto's machine was ordered and delivered before Burlington initiated the Arkansas litigation." *Id.* at *2 (collecting cases in support of this emphasis). Moreover, the court was unpersuaded by the fact that the purchaser knew Burlington was about to sue BVA when it purchased the space dye machine, and noted that Burlington waited

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

13

almost two years[5] from the date of delivery to commence the action against Palmetto.

The same considerations are applicable to the present action. Maples' machines were ordered and delivered before Burlington brought suit against Vinson et al. in Arkansas. Moreover, there is no evidence that Maples knew Burlington planned to sue BVA when it purchased the space dye machines. In addition, Burlington waited until November 3, 1994 to commence the present action: almost one and a half years after the final delivery to Maples.

Further research indicates that the Fourth Circuit's focus on how the time of delivery relates to the litigation was well-placed. Wright, Miller & Cooper address the "succession in interest test," stating that:

> [T]he major distinction drawn by the preclusion rules focuses on the time of transfer in relation to the litigation. Ordinarily a judgment is binding on a nonparty who took by transfer from a party after judgment or while suit was pending, but is <u>not binding on a party who was involved in a transfer to or from a party prior to institution of the action</u>.

Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4462 (1981). In addition, Wright, Miller & Cooper cite an old Supreme Court case, *Postal Telegraph Cable Company v. City of Newport*, 247 U.S. 464, 38 S.Ct. 566, 62 L.Ed. 1215 (1918),

---

[5] Although the Fourth Circuit stated that the period between delivery and commencement of the action was three years, this court's review of the opinion indicates that the time span actually was two years. The BVA machine was delivered to Palmetto on June 25, 1993, and Burlington commenced its action against Palmetto on May 11, 1995.

14

in which the Court states that privity no longer exists between grantor and grantee once title to the property has passed. 247 U.S. at 475, 38 S.Ct. at 570.

The court finds no privity resulting from Maples' succession to the interest in the machines purchased from BVA.

### (2) Control of original suit

Burlington does not suggest that Maples exercised any control over the litigation of the original Arkansas action against Vinson, BVA, and UTMC. The court has received no evidence suggesting Maples had such control and, therefore, cannot find privity on that basis.

### (3) Adequate representation of interests

The Eleventh Circuit has elaborated upon the "adequacy of representation" requirement:

> We begin with a discussion of the doctrine of "virtual representation", which supports a finding of privity "when the respective interests are closely aligned and the party to the prior litigation adequately represented those interests." ... Several factors are relevant, including "participation in the first litigation, apparent consent to be bound, apparent tactical maneuvering, [and] close relationships between parties and nonparties."

*Jaffree v. Wallace*, 837 F.2d 1461, 1467 (11th Cir. 1988) (citations omitted). Burlington argues that Maples engaged in "tactical maneuvering," because it refused to intervene in the Arkansas action against Vinson, BVA, and UTMC. Burlington further asserts that there was a "close relationship" between Maples and BVA.

15

Neither of those arguments is sufficient to find privity between Maples and BVA.

Burlington has presented no authority to support the proposition that a failure to intervene in a court that lacks jurisdiction can create privity with a third party who is before that court. Moreover, "a party seeking a judgment binding on another cannot obligate that person to intervene; he must be joined." *Martin v. Wilks*, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989).[6] Maples could not be joined, however, because the Arkansas court lacked personal jurisdiction. Maples did not engage in "tactical maneuvering" sufficient to create privity with BVA.

Burlington finally argues that Maples was in a "close relationship" with BVA, because: (1) Maples expressed concern over potential trade secret liability prior to purchase, and obtained an indemnification agreement from BVA; (2) BVA grossed over $450,000 from its business relationship with Maples; and (3) Maples was

---

[6] *Martin v. Wilks* was a reverse discrimination action in which the Supreme Court held that held that white fire fighters, who had failed to intervene in earlier employment discrimination proceedings in which consent decrees were entered, could challenge employment decisions taken pursuant to those decrees. *Martin* was superseded by section 108 of the Civil Rights Act of 1991, 42 U.S.C. § 2000e-2(n)(1). Even so, that statute precludes only challenges to "an employment practice that implements ... a litigated or consent judgment or order that resolves a claim of employment discrimination ...." 42 U.S.C. § 2000e-2(n)(1)(A).

The dispute between Burlington and Maples is not an employment discrimination action. Nevertheless, the rationale of *Martin* remains applicable to these proceedings.

16

"fully aware" of the Arkansas litigation commenced by Burlington against BVA.

Those factors are insufficient to find the type of "close relationship" required in this circuit:

> Virtual representation demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues. In reviewing cases decided under the doctrine, we have described the types of relationships contemplated: "estate beneficiaries bound by administrators, presidents and sole stockholders by their companies, parent corporations by their subsidiaries, and a trust beneficiary by the trustee." *Southwest Airlines Co. v. Texas Intern. Airlines*, 546 F.2d 84, 97 (5th Cir. 1977)(citations omitted).

*Pollard v. Cockrell*, 578 F.2d 1002, 1008-09 (5th Cir. 1978); *see also Jaffree v. Wallace*, 837 F.2d 1461, 14667-68 (11th Cir. 1988)(familial relationship may be sufficient to find privity).

In light of the examples enumerated by the Fifth Circuit, this court finds the relationship between Maples and BVA arising from their business dealings was not sufficiently close to establish privity for purposes of holding Maples collaterally estopped by the consent decree and permanent injunction entered in Arkansas.

### III. CONCLUSION

In accordance with the foregoing analysis, the court finds that Maples is not collaterally estopped from contesting whether the machinery purchased from BVA is a Burlington trade secret. Furthermore, noting the deposition testimony that the machines purchased by Maples may be substantially different from those

17

produced by Burlington, the court finds there are genuine issues of material fact as to whether these machines are a trade secret and, thus, whether any use or sale of these machines violate a trade secret of Burlington's. Therefore, Burlington's motion for partial summary judgment is due to be denied.

An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the __1st__ day of October, 1998.

                                    _____
                                    United States District Judge

18